**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 11-cv-01417-WJM-MJW

MILE HIGH BANKS, a Colorado Banking Corporation,

Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver Firs Tier Bank

Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

This case is before the Court on Plaintiff's Motion for Issuance of Temporary Restraining Order and Preliminary Injunction. (ECF No. 2.) In opposition to the Motion, Defendant argues that the Court lacks jurisdiction to enter the requested injunction. For the reasons set forth below, the Court DENIES Plaintiff's Motion based on the Court's lack of subject matter jurisdiction to grant the proposed injunctive relief.

## I. BACKGROUND

FirsTier Bank loaned Casa Grande Capital Group $22,600,000 in June 2008 (the "Casa Grande Loan"). (Pl.'s Mot. (ECF No. 2), ex. A.) The same day, Plaintiff Mile High Banks ("Plaintiff" or "Mile High") entered into a Loan Participation Agreement with FirsTier under which Mile High contributed $15,000,000 towards the Casa Grande Loan. (Ex. C.) The Loan Participation Agreement provided that FirsTier, as the

"Originating Bank", would "be empowered to service and manage the Loan in the ordinary course of its business in the same manner as it services similar loans in its own portfolio." (*Id*. at 1.) As a limitation of FirsTier's authority to manage the Casa Grande Loan, FirsTier agreed to make decisions jointly with Mile High. (*Id*. at 2.)

In 2009 and 2010, the Loan Participation Agreement was extended on the same terms. (Exs. D & F.) On January 28, 2011, the State Bank Commissioner of Colorado closed FirsTier Bank and appointed Defendant Federal Deposit Insurance Corporation ("Defendant" or "FDIC") as receiver. (Compl. ¶ 9.) The FDIC proposes to sell the Casa Grande Loan on June 2, 2011.

## II. JURISDICTION

Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") in 1989 in response to the "precarious financial condition of the nation's banks and savings and loan institutions." *RTC v. Love*, 36 F.3d 972, 975 (10th Cir. 1994). FIRREA grants broad powers to the Resolution Trust Corporation[1] ("RTC") and the FDIC "to deal expeditiously with failed financial institutions." *Id*. The FDIC and RTC are "empowered to merge insolvent institutions into other insured institutions; to transfer the assets and liabilities of insolvent institutions to other institutions; and, with approval of the OTS, to organize new institutions to take over assets and liabilities of insolvent institutions." *UMLIC-Nine Corp. V. Lipan Springs Development*, 168 F.3d 1173, 1178

---

[1] The powers delegated to the FDIC and RTC are identical. *See UMLIC-Nine Corp. v. Lipan Springs Development Corp.*, 168 F.3d 1173, 1177 (10th Cir. 1999). Thus, the case law does not distinguish between the two and neither will the Court.

(10th Cir. 1999) (citing 12 U.S.C. § 1821(d)(2)(F), (G)).

Defendant contends that FIRREA's so-called "anti-injunction" provision, 12 U.S.C. § 1821(j), removes this Court's jurisdiction to issue the injunctive relief requested by Mile High. Section 1821(j) states: "Limitation on court action: Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." This section was "intended to permit the FDIC to perform its duties as conservator or receiver promptly and effectively without judicial interference." *Hindes v. FDIC*, 137 F.3d 148, 160 (3d Cir. 1998).

When Congress enacts a statute prohibiting a federal court from granting a certain type of remedy, that limitation is jurisdictional. *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981) (holding that prohibitions against enjoining or restraining IRS assessments in the federal Tax Injunction Act constitute limitations on federal district court jurisdiction). To that end, numerous courts have found that the § 1821(j) bar applies to various types of requests for equitable relief, including requests for an injunction. *See, e.g.*, *Hindes,* 137 F.3d at 159-61 (holding § 1821(j) precludes declaratory and injunctive relief); *Hanson v. FDIC*, 113 F.3d 866, 870-71 (8th Cir. 1997) (finding that the imposition of a constructive trust would restrain or effect the FDIC and thus the Court lacked jurisdiction under § 1821(j) to award that equitable remedy); *Trinsey v. K. Hovnanian*, 841 F. Supp. 694, 695 (E.D. Pa. 1994) (holding court was barred from considering the plaintiff's request for a determination of rights with respect

to an asset owned by the failed institution); *Centennial Assoc. Ltd. P'ship v. FDIC*, 927 F. Supp. 806, 812 (D.N.J. 1996) (explaining that "Congress crafted a broad measure depriving courts of the power to grant injunctions, specific performance, [and] rescission . . ."). The D.C. Circuit has described § 1821(j) as "effect[ing] a sweeping ouster of courts' power to grant equitable remedies." *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995).

To determine whether it has jurisdiction to award the requested injunctive relief, the Court must first evaluate whether the FDIC's challenged actions constitute the exercise of a receivership power or function. If so, pursuant to § 1821(j), the FDIC is protected from all court action that would restrain or affect the exercise of those powers or functions. *Bank of America Nat. Ass'n v. Colonial Bank*, 604 F.3d 1239, 1243 (11th Cir. 2010).

Plaintiff contends that the Court has jurisdiction to issue the requested injunctive relief because the FDIC is acting beyond its statutory authority and violating state contract law. As one court has held: "By its terms, § 1821(j) shields only 'the exercise of powers or functions' Congress gave to the FDIC; the provision does not bar injunctive relief when the FDIC has acted or proposes to act beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions." *National Trust for Historic Preservation v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993), judgment vacated, 5 F.3d 567 (D.C. Cir. 1993), and reinstated in relevant part, 21 F.3d 469 (D.C. Cir. 1994).

Mile High argues that the FDIC has not chosen to exercise its statutory right to

rescind the contract between Mile High and FirsTier and, as such, it is bound to follow the terms of the contract. Plaintiff cites to *Deutsche Bank National Trust Company v. FDIC*, 2011 WL 1225796 (C.D. Cal. Jan. 7, 2011) in support of the argument that the FDIC lacks the power to breach contracts and, when it does so, it acts beyond its statutory authority. In *Deutsche Bank*, the district court held that Plaintiff's claim for equitable relief—in the form of a constructive trust—was not barred by section 1821(j) because the FDIC was blatantly ignoring its obligations under a contract between the troubled bank and a third party. *Id*. at *9.

Initially, the Court notes that based on its review of the relevant case law, the Central District of California's holding in *Deutsche Bank* appears to be an outlier. The court in *Deutsche Bank* relied on the Ninth Circuit's holding in *Sharpe v. FDIC*, 126 F.3d 1147 (9th Cir. 1997) which the Ninth Circuit itself has called "an unusual case." *See McCarthy v. FDIC*, 348 F.3d 1075, 1078 (9th Cir. 2003).

Moreover, the Court finds both *Sharpe* and *Deutsche Bank* distinguishable on the key point that both of those cases involved the propriety of equitable relief after the assets had been liquidated. Neither case involved a district court enjoining the FDIC from selling an asset of the troubled institution, the remedy Plaintiff specifically seeks in its Motion. While it may be less clear whether the Court can impose a constructive trust or grant some form of equitable relief § 1821(j) notwithstanding, as the courts held in *Sharpe* and *Deutsche Bank*, Section 1821(j) explicitly provides that the Court may not "restrain" the FDIC's exercise of its powers as receiver. This emphasis on restraining

the FDIC shows that Congress clearly intended to remove the Court's power to grant injunctive relief. Given this key distinction, the Court does not find *Sharpe* and *Deutsche Bank* persuasive here.

The Court is more compelled to follow the reasoning set forth in *Volges v. Resolution Trust Corporation*, 32 F.3d 50 (2d Cir. 1994). There, the district court interpreted the language of § 1821(j) to allow it to enjoin the RTC from taking an action that would breach a contract. Overruling the district court, the Second Circuit held that § 1821(j) did not contain any limitation "that would give courts equitable jurisdiction to compel the RTC to honor a third party's rights as against the RTC under state contract law." *Id*. at 52. The majority of courts have agreed with the Second Circuit's interpretation of § 1821(j) and have consistently held that the Court lacks jurisdiction to enjoin the FDIC from taking a statutorily authorized action, even if such action may result in a breach of contract under state law. S*ee, e.g., RPM Invs., Inc. v. RTC*, 75 F.3d 618, 621 (11th Cir. 1996) (refusing to enjoin alleged breach of contract because "[e]ven claims seeking to enjoin the [FDIC] from taking allegedly unlawful actions are subject to the jurisdictional bar of § 1821(j)."); *National Trust for Historic Preservation*, 21 F.3d 469 (refusing to enjoin sale of property in alleged violation of National Historic Preservation Act); *Ward v. RTC*, 996 F.2d 99 (5th Cir. 1993) (per curiam) (finding sale of real estate belonging to failed bank within the scope of RTC's function, even if done illegally); *Gross v. Bell Savings Bank, PaSA*, 974 F.2d 403, 407-08 (3d Cir. 1992) ("[W]here the RTC performs functions assigned it under the statute, injunctive relief will

be denied even where the RTC acts in violation of other statutory schemes . . . . We find here that the availability of injunctive relief does not hinge on our view of the proper exercise of otherwise - legitimate powers.").

Thus, the Court does not agree with Plaintiff that this Court has jurisdiction to enjoin the sale of the Casa Grande Loan on the basis that allowing the sale to go forward would be a breach of contract. The Court makes no finding with respect to whether the sale will breach the FDIC's contractual obligations to Mile High. Rather, the Court finds that, regardless of whether the sale would breach any contract, such breach is immaterial to the Court's analysis of whether it has jurisdiction to enjoin the sale. The sole question for the Court at this juncture of the proceedings is whether the FDIC is acting within the scope of its statutory authority by marketing and selling the Casa Grande Loan. If so, the Court cannot take any action that would restrain that sale.

One of the listed powers of the FDIC, when acting as a receiver, is to "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution, having due regard to the conditions of credit in the locality." 12 U.S.C. § 1821(d)(2)(E). Also while acting as receiver, the FDIC has the power to "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer." 12 U.S.C. § 1821(d)(2)(G)(i)(II). The proposed sale of the Casa Grande Loan falls plainly within these powers. As one district court in this circuit has held: "Clearly, the disposition of a failed thrift's assets . . . is one of the quintessential statutory powers of the RTC as a receiver." *Pyramid Constr. Co., Inc. v.*

*Wind River Petroleum*, 866 F. Supp. 513, 517-18 (D. Utah 1994) (citing 12 U.S.C. § 1821(d)(2)(E) (giving the RTC the express power to "realize upon the assets of the institution")); *see also Ward*, 996 F.2d at 104 (holding that the "sale of property acquired by the RTC from a failed institution, or administered by the RTC as conservator or receiver of such an institution, is beyond cavil a statutory power and function of the RTC").

Because the sale of the Casa Grande Loan is within the scope of the powers afforded to the FDIC as receiver for FirsTier, the Court cannot take any action that would "restrain or affect" the sale of that loan. *See* 12 U.S.C. § 1821(j). Plaintiff requests an injunction ordering that the FDIC "shall not: (a) interfere with Mile High Banks' right and ability to manage and administer the Casa Grande Loan; (b) Market or sell the Casa Grande Loan; (c) Directly or indirectly engage in any conduct that would interfere with Mile High Banks' right to collect all future payments and financial reporting covenants under the Casa Grande Loan." (ECF No. 2 at 108.)

All three of these requested provisions would likely restrain the FDIC's powers to act as receiver for FirsTier, most notably the request that the FDIC be enjoined from marketing or selling the Casa Grande Loan. *See Ward,* 996 F.2d at 104 (holding that section 1821(j) prevents a court from either enjoining or rescinding the RTC's sale of property acquired from a failed thrift); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1329 (6th Cir. 1993) (holding that section 1821(j) prohibits a court from rescinding the RTC's transfer of the assets of a failed thrift). Because the Court cannot take any

action that restrains the FDIC from executing its powers as receiver, it cannot grant Mile High the injunctive relief requested.[2]

## III. CONCLUSION

For the reasons set forth above, Plaintiff Mile High Banks's Motion for Temporary Restraining Order and Preliminary Injunction is DENIED for lack of subject matter jurisdiction. Based on this ruling, the Court does not reach any of the parties' other contentions.

Dated this 2nd day of June, 2011.

BY THE COURT:

William J. Martínez
United States District Judge

[2] As discussed during argument, the Court's ruling on Mile High's request for injunctive relief does not leave Mile High without remedy, even after the sale of the Casa Grande Loan. Section 1821(j) does not preclude the recovery of monetary damages, and the Court makes no judgment with respect to whether such damages would be appropriate in any event. Mile High's arguments regarding Robert Johnson's actual or apparent authority to bind the FDIC, and whether or not Mile High and the FDIC had reached a settlement agreement with respect to lead bank status, go to the merits of Mile High's breach of contract claim, but do not and cannot convey jurisdiction on this Court to grant the requested injunctive relief.